## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARA HECHT, et al.<br><br>*Plaintiff,*<br><br>v.<br><br>EAST BRUNSWICK BOARD OF<br><br>EDUCATION, et al.<br><br>*Defendant.* | Civil Action No.: 18-cv-06039 (PGS)(LHG)<br><br><br>MEMORANDUM<br>AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on Defendants East Brunswick Board of Education ("Board"), Michael Gaskell, Margaret Haas, and Russell Petronko's Motion to Dismiss Plaintiffs Complaint pursuant Federal Rule of Civil Procedure 12(b)(6) (ECF No. 6).

### Background

This case involves allegations from a middle school student, Plaintiff D.H. and her mother, Dara Hecht, that their constitutional rights were violated when the Board suspended D.H. for fighting with a classmate on September 16, 2016. Prior to this suspension, Hecht had lodged several complaints against Defendant Michael Gaskell, the Principal of the Hammorskjold Middle School. (Complaint at ¶¶ 7-18).

In October and December 2015, Hecht met with Principal Gaskell to discuss issues regarding D.H.'s grades received in her computer and social studies classes. (*Id.* at ¶¶ 7-8). These disputes continued into January 2016, wherein Principal Gaskell instructed all of D.H.'s teachers

to disregard any emails from Hecht. (*Id.*). Dissatisfied with Principal Gaskell's handling of her complaints, Hecht brought the issues before the Board of Education. (*Id.* at ¶¶ 8-9). However, her complaints fell on deaf ears. (*Id.* at ¶ 9).

In any event, on March 10, 2016, after a student had fallen and broken a bone, Hecht again emailed Principal Gaskell to complain about the lack of supervision in a school stairwell. (*Id.* at ¶ 10). The email also expressed concerns about the manner in which a security guard oversaw students being dropped off across the street from the school. (*Id.*). Principal Gaskell responded that there were no safety issues with either, and she asked D.H. separately if she agreed with her mother's concerns, which enraged Hecht. (*Id.* at ¶¶ 11-12).

The following month, April 2016, Hecht claims that the security guard scolded her for approaching the student drop-off area too quickly and for dropping off D.H. in a prohibited area, despite the fact that other people did the same. (*Id.* at ¶ 14). According to the Complaint, Principal Gaskell contacted the East Brunswick Police Department to report some harassing behavior between Hecht and a security guard and, on April 14, 2016, two officers approached Hecht's home to discuss the matter; however, she did not answer the door. (*Id.* at ¶¶ 14-15). Thereafter, Hecht spoke with an officer and explained the growing tension between her, D.H., and the security guard, and filed a police report against him, based on things the security guard purportedly said. (*Id.* at ¶¶ 15-16). A week later, April 21, 2016, Hecht again emailed Principal Gaskell complaining about the continuing issues she had with the security guard and threatened to report the events to the newspaper unless her concerns were resolved. (*Id.* at ¶ 17). That same day, Principal Gaskell filed a police report against her, presumably based on the ongoing conflicts between her and the guard. (*Id.* at ¶ 18).

On May 3, 2016, Hecht emailed Principal Gaskell to notify him that she intended to file a complaint with the county superintendent; later that day, Principal Gaskell replied that he was unaware of these ongoing issues with the security guard but would initiate an investigation. (*Id.* at ¶ 19). According to Plaintiffs, these complaints should have already triggered an investigation for Harassment, Intimidation, and Bullying (hereinafter "HIB"), pursuant N.J.S.A. § 18A:37-13, *et seq.*, based on the guard's continued harassment of Plaintiffs. (*Id.* at ¶ 20). When no action was taken, Hecht wrote to both the County and, later, the Board about Principal Gaskell's shortcomings, specifically his failure to initiate an HIB investigation. (*Id.* at ¶ 21). The Board responded, finding that Principal Gaskell had done nothing wrong. (*Id.* at ¶ 20).

In any event, on September 16, 2016, D.H. was involved in a fight when a large student that she did not know attempted to punch her, but missed; D.H. then proceeded to punch and kick him. (*Id.* at ¶ 22). Three days later, D.H. was informed that she would receive a one day in-school suspension and a note of the incident would be placed in her permanent file, despite not being found to violate HIB. (*Id.* at ¶ 23). Prior to this incident, D.H. was in good standing, being an honor student with no previous discipline. (*Id.*). According to the Complaint, no one else was present in the hallway during the incident and D.H. was only acting in self-defense. (*Id.* at ¶ 24). Hecht appealed the suspension immediately, and asked to review video surveillance of D.H.'s altercation. (*Id.* at ¶¶ 25-26). A week later, Hecht requested copies of D.H.'s school records and, again, video surveillance of the incident, pursuant the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g). (hereinafter "FERPA"). (*Id.* at ¶¶ 29-32). However, Hecht's requests were ignored. (*Id.*). In another email, dated September 28, 2016, Hecht continued to protest the Board's disciplinary decision and noted that in a comparable circumstance, wherein a student was involved in a fight and violated HIB, the student received only two lunch detentions. (*Id.* at ¶ 32). The Board

responded that the district considered the matter closed and that D.H. would serve her in-school suspension on October 5, 2016. (*Id.* at ¶ 33).

On December 6, 2016, a phone conference was held between Hecht, defense counsel, and an administrative law judge (hereinafter "ALJ"). (*Id.* at ¶ 37). During this hearing, Hecht again requested a copy of the video surveillance. (*Id.*). However, Defendants responded that they did not intend to present any student witnesses and contended that the video was not relevant to the case. (*Id.*). On January 31, 2017, the ALJ directed Defendants to allow Hecht to review the surveillance footage, which she did the following month. (*Id.* at ¶¶ 38-39). On February 22, 2017, after reviewing the video, the ALJ noted that an adult was present during the incident and wanted that individual to testify; but, she never appeared. (*Id.* at ¶ 40).

Almost six months later, on May 30, 2017, an administrative hearing was held on Hecht's appeal of the Board's disciplinary decision. (*Id.* at ¶ 43). At this hearing, only Hecht testified on her own behalf. (Motion to Dismiss, Exhibit D, ALJ Initial Decision, p.7, ECF No. 5-4).[1] She argued that D.H. was only acting in self-defense and that the punishment imposed on D.H. was made in retaliation for the complaint she filed against Principal Gaskell. (*Id.* at p. 3-4). Hecht also contended that Defendants infringed on D.H.'s procedural due process rights, when they refused to show Hecht the video surveillance. (*Id.*). Finally, Hecht claimed that Defendants refused to inform her of any possible witnesses. (*Id.*). Defendants responded, stating that they followed the necessary procedural requirements in issuing D.H.'s short-term suspension. (*Id.*). Moreover, Defendants maintained that the discipline was appropriate, given the severity of D.H.'s conduct

---

[1] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

and was consistent with the suspensions imposed in similar circumstances. (*Id.*). Defendants also noted that the discipline could not be perceived as retaliatory, since Principal Gaskell did not impose the suspension; rather, Defendant Russell Petronko, the Assistant Principal, issued the suspension without consulting Principal Gaskell. (*Id.*). After hearing testimony from both parties, the ALJ determined that, under the circumstances, the Board's decision to suspend D.H. was reasonable, since the undisputed facts demonstrated that the male student did not strike D.H., D.H. struck the male student at least twice, and D.H. deserved to be punished. (Exhibit D, p. 6).

Thereafter, Hecht appealed the ALJ's decision to the Commissioner of Education, again contending that D.H.'s punishment was retaliatory because of the open complaint against Principal Gaskell. (Motion to Dismiss, Exhibit E, Exceptions to Initial Decision, p. 3-4, ECF No. 5-4). In her appeal, Hecht also argued that that Defendants violated their duty to preserve evidence. (*Id.* at p. 4-13). The crux of her appeal focused on inconsistencies in Defendants Petronko and Gaskell's statements, concerning the number of individuals present during the altercation, since both children said there was no one there. (*Id.*). Therefore, Hecht alleged that Defendants altered the video to show students and a staff member present and used this doctored video to justify their punishment. (*Id.* at p.5).

This being said, the Commissioner of Education reviewed the appeal and affirmed the ALJ's determination that the suspension was reasonable. (Motion to Dismiss, Commissioner of Education Decision, Exhibit F, p. 2, ECF No. 5-4). The Commissioner of Education also found "that the record does not reflect D.H.'s procedural due process rights were violated", that "claims that the video was altered are unsubstantiated," and that "accusations of retaliation are without merit". (*Id.*).

Presently, Plaintiffs, alleges that Defendants are liable under 42 U.S.C. §1983 because they retaliated against Hecht, who was exercising her right to free speech, by sending police officers to harass her at various locations, issuing an overly severe punishment to her daughter, D.H., and altering video evidence to justify the harsh discipline. (*Id.* at ¶ 52). Further, Plaintiffs assert that the Board breached their duty to train, supervise, and discipline employees for any wrongdoings. (*Id.* at ¶ 54).

As was presented before the Commissioner of Education, Plaintiffs also allege that Defendants are liable under 42 U.S.C. §1983 for violating both Plaintiffs Hecht and D.H.'s Fourteenth Amendment due process rights when Principal Gaskell, Defendant Margaret Haas, a guidance counselor at the middle school, and Assistant Principal Petronko altered the video tapes and created false witness statements to justify the suspension of D.H. (*Id.* at ¶ 55). Again, Plaintiff's claim that the Board's lack of training and supervision furthered the violation of their constitutional rights. (*Id.* at ¶¶ 58, 64-66).

## Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast

in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; see also *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. See *In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, *Fed. Practice & Procedure: Civil* 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Id.*

Where, as here, Plaintiff is proceeding pro se, the Court should read Plaintiff's complaint generously and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). However, "a pro se plaintiff is not exempt from his burden of providing some affirmative evidence, i.e. not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial." *Niblack v. Murray*, No. 12-6910, 2016 U.S. Dist. LEXIS 99325, at *7 (D.N.J. July 29, 2016) (citing *Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014)).

## Discussion

7

Relying on collateral estoppel, Defendants contend that Plaintiff's claims are barred, since the ALJ and the Commissioner of Education previously addressed and found that no facts supported the issues before the Court. However, issues involving federal constitutional law are out of administrative agencies' purview, and for that reason, the Court finds that collateral estoppel cannot apply.

The Third Circuit has set forth four factors for courts to consider in determining whether collateral estoppel applies: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)). In addition, courts must consider whether the prior adjudication was final and valid. *Id.* When agency decisions have not been affirmed by a judicial forum, the Third Circuit has cautioned that only the "unreviewed agency factfinding" is entitled to preclusive effect. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 193 (3d Cir. 1993).

Plaintiffs argue that the issues of retaliation and video alteration were not actually litigated during the ALJ proceeding. "An issue is 'actually litigated' when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *O'Leary v. Liberty Mut'l. Ins. Inc.*, 923 F.2d 1062, 1066 (3d Cir. 1991) (quoting Restatement (Second) of Judgments §27 cmt. d). "[T]he litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal." *Pittman v. LaFontaine*, 756 F. Supp. 834, 841 (D.N.J. 1991) (citing *In re Braen*, 900 F.2d 621, 628 (3d Cir. 1990)). Here, the ALJ was tasked with determining whether the school's suspension was arbitrary, capricious, or unreasonable.

Likewise, while the Commissioner of Education did acknowledge Plaintiffs' concerns relating to retaliation and video alteration, he, too, was limited to considering the reasonableness of Plaintiff D.H.'s suspension.

Under N.J.S.A. § 18A:6-9, the Commissioner of Education enjoys broad authority "to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws." "In cases '[w]here the controversy does not arise under the school laws, it is outside the Commissioner's jurisdiction even though it may pertain to school personnel.'" *Goode v. Camden City Sch. Dist.*, No. 16-3936, 2017 U.S. Dist. LEXIS 79301, at *6 (D.N.J. May 24, 2017) (quoting *Bd. of Educ. of E. Brunswick Twp. v. Twp. Council of E. Brunswick Twp.*, 223 A.2d 481, 485 (N.J. 1966)). Courts have held that Section 1983 claims fall outside the Commissioner's jurisdiction. *See Hornstine v. Twp. of Moorestown*, 263 F. Supp. 2d 887, 900 (D.N.J. 2003); *See also Goode*, 2017 U.S. Dist. LEXIS, at *6, *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 895 (D.N.J. 1997) (Title VII, NJLAD, and breach of contract claims do not "arise under the school laws" for purposes of N.J.S.A. § 18A:6-9). Additionally, the Third Circuit has held that administrative agencies do not have the "expertise to issue binding pronouncements in the area of federal constitutional law." *Edmundson*, 4 F.3d at 193 (court declined to preclude issues that pertained to a potential First Amendment violation). As such, because the issues previously adjudicated before the Commissioner of Education, involving D.H.'s suspension, are different than what is presently before the Court, mainly section 1983 claims, collateral estoppel is inapplicable. Thus, Defendants' Motion to Dismiss, based on collateral estoppel, is denied.

ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 23rd day of January, 2019,

**ORDERED** that Defendants' Motion to Dismiss is denied.

_____
PETER G. SHERIDAN, U.S.D.J.